**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| In re: | : | Civ. No. 17-1595 |
|  | : |  |
| **East Orange General Hospital, Inc., et al.,**[1] | : | **OPINION** |
|  | : |  |
| Debtors. | : |  |
|  | : |  |
|  | : | Bankruptcy Case No. 15-31232 |
| **Roseann Denunzio,** | : | (Jointly Administered) |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| **Ivy Holdings, Inc.; Ivy Intermediate Holdings, Inc.; Prospect Medical Holdings, Inc.; Prospect New Jersey, Inc.; Prospect Eogh, Inc.;** | : |  |
|  | : |  |
| Defendants. |  |  |

**KEVIN MCNULTY, U.S.D.J.:**

This is an appeal from orders of Judge Vincent F. Papalia of the U.S. Bankruptcy Court for the District of New Jersey. The debtor, a hospital, was sold free and clear in bankruptcy after due notice to creditors, including the

---

[1]   The Bankruptcy Court caption refers to two jointly administered bankruptcy cases: Bankruptcy Case No. 15–31232, *In re: East Orange General Hospital, Inc.*, and Bankruptcy Case No. 15–31233, *In re: Essex Valley Healthcare, Inc.*

plaintiff, who then remained silent but now seeks to assert her claims against the purchaser. Three orders are relevant:

> (1)    Order dated January 21, 2016, authorizing, *inter alia,* sale of all the debtor's assets free and clear of liens, claims, and encumbrances. ("Sale Order", Bankruptcy ECF no. 330);

> (2)    Order dated November 23, 2016, granting the motion of Prospect[2] to enforce the Sale Order and ordering Ms. DeNunzio to dismiss, without prejudice, her pending lawsuit against Prospect in the Superior Court of New Jersey, Law Division, Essex County. ("Sale Enforcement Order", Bankruptcy ECF No. 867); and

> (3)    Order dated February 21, 2017, denying Ms. Denunzio's motion for reconsideration of the Sale Enforcement Order and denying the parties' applications for sanctions. ("Reconsideration Order", Bankruptcy ECF No. 912, copy at ECF No. 1-1).

Ms. Denunzio appeals from the second and third orders. For the reasons stated herein, the appeal is denied, and the Sale Enforcement Order and the Reconsideration Order are affirmed.

## I. Background

The facts, which are not substantially in dispute, are as follows:

On May 28, 2014, East Orange General Hospital, Inc. and Essex Valley Healthcare, Inc. (collectively, "Debtors") entered into an asset purchase agreement with Prospect EOGH, Inc ("original APA").[3] (Bankruptcy ECF No. 57

---

[2]     The motion was filed on behalf of Prospect EOGH, Inc. and its affiliates, including Ivy Holdings, Inc., Ivy Intermediate Holdings, Inc., Prospect Medical Holdings, Inc., and Prospect New Jersey, Inc. (collectively, "Prospect").

[3]     As explained *infra,* the transaction contemplated by the original APA did not close. The parties subsequently entered into an Amended and Restated Asset Purchase Agreement on November 20, 2015 ("APA"). (Bankruptcy ECF No. 57-2, Exh. B).

at ¶ 9).[4] *See also* (Bankruptcy ECF No. 330-1 at 1) (referring to the May 28, 2014 Asset Purchase Agreement as the "Original Agreement").

Over a year later, on August 19, 2015, Ms. Denunzio, Appellant here, was terminated from her employment with Debtor East Orange Hospital. (Compl. ¶ 6). She had been working as a laboratory aide and department administrative assistant in the Hospital's Pathology Department since March 1968. (*Id.* at ¶¶ 4-6).

The next month, "[o]n September 16, 2015, the Debtors received approval of a Certificate of Need from the New Jersey Department of Health for the sale of the Hospital's assets to Prospect [EOGH, Inc.], subject to certain conditions." (Bankruptcy ECF No. 57 at ¶ 10). *See also* (Compl. ¶ 30). Then, on October 7, 2015, the proposed sale was approved by New Jersey Acting Attorney General John J. Hoffman pursuant to the Community Health Care Assets Protection Act. (Bankruptcy ECF No. 57 at ¶ 10). The proposed sale was also approved by the Superior Court of New Jersey on October 28, 2015. (*Id.*) The original APA did not close, however. (*Id.* at ¶ 11).

Nearly three months after Ms. Denunzio's termination from the Hospital, on November 10, 2015, East Orange General Hospital filed for relief under Chapter 11 of the Bankruptcy Code. (ECF No. 1 of Bankruptcy Case No. 15-31232). On that same date, Essex Valley Healthcare, which is the parent company of East Orange General Hospital, also filed for relief under Chapter 11. (ECF No. 1 of Bankruptcy Case No. 15-31233). On November 13, 2015, Judge Papalia ordered the Chapter 11 cases of East Orange General Hospital and Essex Valley Healthcare to be "consolidated for procedural purposes only and jointly administered under lead Case No. 15-31232." (ECF No. 22 of Bankruptcy Case No. 15-31232, ¶ 2); (ECF No. 4 of Bankruptcy Case No. 15-31233, ¶ 2). Judge Papalia also issued an Order authorizing Debtors to retain

---

4        Unless otherwise indicated, references to Bankruptcy ECF entries pertain to Bankruptcy Case No. 15-31232 (Jointly Administered).

and appoint Prime Clerk LLC ("Prime Clerk") as the claims and noticing agent for the Debtors. (Bankruptcy ECF No. 25).[5]

On November 20, 2015, the Debtors as sellers and Prospect EOGH, Inc. as buyer entered into an Amended and Restated Asset Purchase Agreement ("APA").[6] (Bankruptcy ECF No. 57-2, Exh. B). *See* (Bankruptcy ECF No. 57 at ¶ 11). *See also* (Compl. ¶ 31). On that same date, the Debtors filed a Motion for the entry of orders "(i) approving (a) bidding procedures, including bid protections for the stalking horse bidder, (b) form and manner of sale notices, and (c) sale hearing date, and (ii) authorizing and approving (a) the sale of substantially all of the Debtors' assets free and clear of liens, claims, and encumbrances and (b) assumption and assignment of certain executory contracts and unexpired leases." ("Sale Motion"). (Bankruptcy ECF No. 57).

On November 25, 2015, Prime Clerk served Ms. Denunzio and her counsel via First Class Mail with a copy of the Notice of Commencement of Chapter 11 Bankruptcy Cases and the Meeting of Creditors ("Notice of Commencement") (Bankruptcy ECF No. 83). *See* Affidavit of Service, Exh. B (Bankruptcy ECF No. 89 at 43) (listing "Roseann Denunzio" and "Roseann Denunzio v. EOGH, et al.").[7]

---

[5]     The Bankruptcy docket includes 915 entries for the time period before Ms. Denunzio filed this appeal. I focus on the filings most relevant to the issues now before this Court.

[6]     The APA was subsequently amended by Amendment Nos. 1 and 2. *See* (Bankruptcy ECF No. 330-8 at 5-13). The Amendments were attached to the APA that the Bankruptcy Judge attached to his January 21, 2016 Sale Order. *See* (*id.*) Amendment No. 1 was made effective as of December 11, 2015, (*id.* at 5), and Amendment No. 2 was made effective in January 2016. (*id.* at 9). The specific effective date of Amendment No. 2 is not provided in the attached copy of the Amendment. However, given that the Amendment was made "to reflect the modifications thereto made at the auction that concluded on January 18, 2016," I infer that the effective date was on or after January 18, 2016. (Bankruptcy ECF No. 330-8 at 9).

[7]     The designation "Roseann Denunzio v. EOGH, et al" presumably refers to potential litigation between Ms. Denunzio and the debtor East Orange General Hospital arising from the termination of her employment. There is no indication in the record that such a lawsuit had actually been filed at that time.

4

On December 9, 2015, East Orange General Hospital filed a list of all creditors.[8] (Bankruptcy ECF No. 124). The list included Ms. Denunzio and her counsel. (*Id.* at 33) (listing "Roseann Denunzio" and "Roseann Denunzio v. EOGH, et al.").

Six days later, on December 15, 2015, the Bankruptcy Court entered an Order approving the bidding procedures and form and manner of notices, and setting a sale hearing date ("Bidding Procedures Order"). (Bankruptcy ECF No. 171).

The next day, on December 16, 2015, East Orange Hospital filed its Schedules of Assets and Liabilities (Bankruptcy ECF No. 175), and Statement of Financial Affairs (Bankruptcy ECF No. 176).[9] The Hospital's "Schedule F-Creditors Holding Unsecured Nonpriority Claims" form listed "Roseann Denunzio v. EOGH, et al." as a contingent, unliquidated, and disputed "litigation claim." (*Id.* at 29).[10] The "Amount of Claim" was described as "unknown." (*Id.*)

---

[8]     Under the Bankruptcy Code, a "creditor" is defined, in relevant part, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). *See id.* § 101(15)(defining "entity" as including "person, estate, trust, governmental unit, and United States trustee."). *See also* Fed. R. Bankr. P. 1007(a)(1); 11 U.S.C. § 521(a)(1)(A)(requiring debtor in a voluntary case to file a list of creditors).

[9]     *See* Fed. R. Bankr. P. 1007(b)(1); 11 U.S.C. § 521(a)(1)(B)(requiring debtor, unless the court orders otherwise, to file a schedule of assets and liabilities, and statement of financial affairs).

    The schedules, summary of schedules, and statement of financial affairs were subsequently amended by the debtors. However, the amendments did not involve the listing of Ms. Denunzio's claim. *See* (Bankruptcy ECF Nos. 289, 290, 322-23, and 328).

[10]     Section 101(5) of the Bankruptcy Code broadly defines "claim." The definition states:

    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

On December 18, 2015, Prime Clerk served Ms. Denunzio, through her counsel, via first class mail with a copy of the Notice of Sale of Certain Assets at Auction ("Sale Notice").[11] (Bankruptcy ECF No. 208, Exh. A). *See* Affidavit of Service (Bankruptcy ECF No. 208 at 47) (listing "Roseann Denunzio v. EOGH,

---

11 U.S.C. § 101(5). *See In re Grossman's Inc.*, 607 F.3d 114, 125 (3d Cir. 2010) (holding that "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code."). The terms "unliquidated" and "contingent" are not defined in the Bankruptcy Code. Black's Law Dictionary defines "unliquidated claim" as "[a] claim for which a specific value has not been determined." Black's Law Dictionary 282 (10th ed. 2014). Moreover, it defines "contingent claim" as "[a] claim that has not yet accrued and is dependent on some future event that may never happen." *Id. See* 2 Collier on Bankruptcy P 101.05 (16th ed. 2018) (explaining that "[t]ort claims constitute claims, and thus are payable out of the estate, and constitute dischargeable debts. . . Under the Code, the fact that the tort claim may be unliquidated or disputed does not mean that it is not a claim.").

I note in passing that Ms. Denunzio's NJLAD cause of action, if asserted, would have been a "claim" under the Bankruptcy Code because it was reducible to money damages and was therefore asserting a "right to payment." *See In re Kaiser Aluminum Corp.*, 386 F. App'x 201, 205 (3d Cir. 2010) (recognizing "the injunctive power of the Bankruptcy Court is limited to enjoining causes of action that actually violate that injunction," and vacating the judgment of the District Court and remanding for further proceedings because the Third Circuit could not "discern" whether the Bankruptcy Court considered each individual cause of action asserted in a lawsuit "to determine whether it was barred by the Plan injunction.").

11    The Sale Notice stated, in relevant part:

> **PLEASE TAKE FURTHER NOTICE** that the Debtors have requested the Bankruptcy Court enter an order (the "Sale Order"), which provides, among other things, for the sale (the "Sale") of the Acquired Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, including under section 363(f) of the Bankruptcy Code to Prospect or the Successful Bidder.

(Sale Notice at 4)(emphasis in original). It also stated:

> **THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE SALE OBJECTION DEADLINE SHALL BE A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO THE MOTION, SALE, SALE ORDER, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE ASSET PURCHASE AGREEMENT (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF THE ACQUIRED ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS TO PROSPECT OR THE SUCCESSFUL BIDDER).**

(*Id.* at 6) (emphasis in original).

6

et al."). The Sale Notice informed Ms. Denunzio's counsel of the sale-related hearing to be held on January 20, 2016 and the January 6, 2016 deadline for objections. (Bankruptcy ECF No. 208, Exh. A at 4-6). A copy of the Bidding Procedures Order and the Bidding Procedures was attached to the Notice. (*Id.* at 1 n.2, 7-21).

On January 19, 2016, the Bankruptcy Court issued an Order establishing, *inter alia*, deadlines to file proofs of claim "(as defined in section 101(5) of the Bankruptcy Code), including but not limited to all claims of setoff or recoupment and claims arising under section 503(b)(9) of the Bankruptcy Code, against the Debtors that arose on or prior to the Petition Date." (Bankruptcy ECF No. 313 at 2-3). The deadline for all creditors (except governmental units) was set for February 26, 2016 at 5:00 p.m. (*Id.* at 2-3).

After a hearing on January 20, 2016, the Bankruptcy Court entered its Order authorizing the Debtors to (a) sell substantially all of their assets free and clear of liens, claims, and encumbrances, and (b) assume and assign certain executory contracts and unexpired leases ("Sale Order", Bankruptcy ECF No. 330). *See also* Bankruptcy ECF No. 337 (copy of the transcript of the Sale Hearing). The Sale Order, filed on January 21, 2016, included a copy of the APA, as amended, as Exhibit A. (Bankruptcy ECF Nos. 330-1 to -8). *See also* (Sale Order ¶ 31) (providing that the Sale, including, but not limited to, the terms and conditions of the APA and other agreements and transfers, "are hereby authorized and approved in all respects.").

In particular, the Sale Order addressed successor liability. Paragraph 13 of the Order provided as follows:

> The Successful Bidder[12] is not a mere continuation of the Debtors, there is not substantial continuity between the Successful Bidder and the Debtors, and there is no continuity of enterprise and no common identity between the Debtors and the Successful Bidder.

---

[12]   The Order referred to Prospect EOGH, Inc. as the "Successful Bidder" or "Buyer," and collectively referred to Essex Valley Healthcare, Inc. and East Orange General Hospital, Inc. as the "Debtors." (Sale Order at 2).

> The Successful Bidder is not holding itself out to the public as a continuation of any Debtor. The Successful Bidder is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer and the Debtors.

(*Id.* at ¶ 13).[13] Moreover, in accordance with Section 363(f) of the Bankruptcy Code, paragraph 33 of the Order provided that all claims and interests, known or unknown, would be extinguished by the sale:

> [U]pon the Closing Date and pursuant to and except as otherwise set forth in the Agreement, the Assets shall be transferred to Buyer free and clear of all Encumbrances, Claims, interests, and liens. . . liabilities related to the Internal Revenue Code, or any other liability relating to Debtors or any of the Debtors' predecessors or Affiliates, whether known or unknown, choate or inchoate, filed or untiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, direct or indirect, disputed or undisputed, whether arising prior to or subsequent to the

---

[13]    Similarly, paragraph 39 of the Order provided as follows:

The transfer of the Purchased Assets to Buyer under the Asset Purchase Agreement shall not result in (i) Buyer and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) Buyer and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claims and Interests or Excluded Liability or (iii) Buyer and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Asset Purchase Agreement. Without limiting the effect or scope of the foregoing, as of the Closing Date, Buyer and its Affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) shall have no successor or vicarious liabilities of any kind or character.

(*Id.* at ¶ 39).

> commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (other than Assumed Liabilities and Permitted Liens) (collectively, the "Claims and Interests"), with all such Claims and Interests to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

(*Id.* at ¶ 33).[14]

The Sale Order also permanently enjoined all entities from seeking to enforce successor liability claims against Prospect. It provided that:

> all entities, including all . . . litigation claimants, employees and former employees, and trade or other creditors holding Claims and Interests against the Debtors of the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Assets or the transfer of the Assets to Buyer, hereby are forever barred, estopped, and permanently enjoined from asserting any Claims and Interests relating to the Assets or the transfer of the Assets against Buyer and its Affiliates, successors, designees, assigns, or property or the Assets including, without limitation taking any of the following actions with respect to or based on any Interest or Claim relating to the Assets or the transfer of the Assets (other than Assumed Liabilities): (a) commencing or continuing in any manner any action or other proceeding against Buyer, its Affiliates, successors or assigns, assets or properties . . .

(*Id.* ¶ 38). Accordingly, the Order also provided, in part, that it is "binding in all respects" upon "all creditors" and "all holders of any Interests or Claims (whether known or unknown) against any Debtor, [and] any holders of Claims and Interests against or on all or any portion of the Purchased Assets." (*Id.* at ¶ 58).

---

[14]   *See also id.* ¶ 15 (stating, in part, that "[t]he conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Purchased Assets free and clear of any interest in such property, with all Claims and Interests . . . to attach to the cash proceeds of the Sale in the order of their priority[.]" and "[t]hose holders of Claims and Interests against any Seller, its estate, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.").

Furthermore, under the APA, which was incorporated in the Sale Order, Prospect assumed only the "Assumed Liabilities" and not the "Excluded Liabilities."[15] *See* (Bankruptcy ECF No. 330-1 at Sections 2.3, 2.4; *see also* Sale Order, Bankruptcy ECF No. 330 ¶ 41) (stating "[t]he Successful Bidder is assuming the Assumed Liabilities, as set forth in the Agreement, and is not assuming any obligations other than the Assumed Liabilities."). The "Excluded Liabilities" were specified as follows:

> Notwithstanding anything herein to the contrary, Buyer is assuming only the Assumed Liabilities and is not assuming and shall not become liable for the payment or performance of any other Liability of Sellers (collectively, the 'Excluded Liabilities'). The Excluded Liabilities are and shall remain Liabilities of the Sellers. Without limiting the generality of the foregoing, the term 'Excluded Liabilities' includes any Liability of Sellers:
> . . .
>  (x) arising in connection with the employment by the Sellers, or the termination of any employment by the Sellers, of any Persons, whether as full-time employees, part-time employees, consultants or temporary workers, and including Liabilities for compensation, Claims[16] for workers' compensation or OSHA, or Claims or other grievances by Employees asserting wrongful termination, breach of contract, tort, or other violation of Law by Sellers or any of their Affiliates arising from any facts, events or circumstances arising on or prior to the Closing Date.

(Bankruptcy ECF No. 330-1 at Section 2.4(x)).

On that same day, Prime Clerk served Denunzio, through counsel, via first class mail, with a copy of the "Order (i) Establishing Procedures for Compliance by the Official Committee of Unsecured Creditors for East Orange General Hospital, Inc., and (ii) Authorizing the Retention of Prime Clerk as Information Agent for the Official Committee of Unsecured Creditors Effective

---

[15]    *See* (Bankruptcy ECF No. 330-7 at 26) (defining "'liability'" as "any debt, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all fines, penalties, costs and expenses relating thereto.").

[16]    See *id.* at 19 (defining "'claim,'" in part, as "ha[ving] the meaning ascribed by Bankruptcy Code § 101(5).").

as of November 23, 2015," (Bankruptcy ECF No. 300). *See also* Affidavit of Service (Bankruptcy ECF No. 356, Exh. A at 21) (listing "Roseann Denunzio v. EOGH, et al.").

The next day, on January 22, 2016, Prime Clerk served DeNunzio and her counsel via first class mail with a copy of the Notice of Deadline for Filing Proofs of Claim Against the Debtors ("Bar Date Notice") and a proof of claim form. *See* Affidavit of Service (Bankruptcy ECF No. 364 at 68) (listing "Roseann Denunzio" and "Roseann Denunzio v. EOGH, et al.").[17] Ms. Denunzio did not file a proof of claim by the specified deadline, February 26, 2016 at 5:00 p.m., or indeed ever. (Bankruptcy ECF No. 313 at 2-3). *See also* (Bankruptcy ECF No. 850-1, Hager Cert. at ¶ 5) (acknowledging that Ms. Denunzio did not make a claim in the Bankruptcy Court); (Appellant Br. at 3) ("[t]here is no dispute that Plaintiff Denunzio never filed a proof of claim.").

The closing date of the sale was March 1, 2016. (Bankruptcy ECF No. 836 at ¶ 7).

About three months after the sale closed (and nine months after being terminated from the Hospital), on June 9, 2016, Ms. Denunzio filed a one-count lawsuit against the purchaser, Prospect, in the Superior Court of New Jersey, Law Division, Essex County. That state court complaint alleged age discrimination, in violation of the New Jersey Law Against Discrimination

---

[17]     The Bar Date Notice stated, in relevant part:

ANY HOLDER OF A CLAIM THAT IS NOT EXEMPT FROM THE REQUIREMENTS OF THIS ORDER, AS SET FORTH IN SECTION 4 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM WILL BE BARRED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES, FROM VOTING ON ANY CHAPTER 11 PLAN FILED IN THESE CASES, AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM.

(Bankruptcy ECF No. 364, Exh. B at 5). *See* 11 U.S.C. § 1111(a); Fed. R. Bankr. P. 3003(c)(2)(requiring that a creditor in a Chapter 11 case whose claim is scheduled as disputed, contingent, or unliquidated must file a proof of claim).

11

("NJLAD"), N.J. Stat. Ann. § 10:5–1, *et seq.*[18] (Compl., Bankruptcy ECF No. 836-3). Ms. Denunzio's state court complaint sought back pay, front pay, emotional distress compensatory damages, aggravation of preexisting condition damages, punitive damages, interest, "monetary gross up to compensate for any negative tax consequences," attorneys' fees, and legal costs. *Id.* At 8.

   The Complaint alleged that the successor Prospect entities, jointly and severally, were her employer and were subject to successor liability under the NJLAD. (*Id.* at ¶ 14). It further alleged that those entities were not "mere successors" to the Hospital "because they were sufficiently connected to the culpable conduct that terminated [Ms. Denunzio] in violat[ion] of her rights under the LAD." (*Id.* at ¶ 15). According to Ms. Denunzio, as of August 2015, Mr. Krouse, the individual who terminated her employment on the 19th of that month, was an upper manager employed by Prospect. (*Id.* at ¶ 17).

   Ms. Denunzio's NJLAD Complaint alleged that on January 28, 2014, Prospect Medical Holdings, Inc. issued a Letter of Intent regarding its purchase of the Hospital's assets and liabilities. (*Id.* at ¶ 26). By that date, and thereafter, Prospect allegedly exercised control and/or direction over the Hospital's operations and employees in preparation for purchasing its assets. (*Id.* at ¶¶ 26-27). Ms. Denunzio further alleged that a few months later, on May 1, 2014, Prospect Medical Holdings, Inc. submitted a Certificate of Need application to the New Jersey Department of Health for the transfer of ownership of the Hospital from Essex Valley Healthcare and its subsidiary East Orange General Hospital to Prospect EOGH, Inc. (*Id.* at ¶ 28). That application was approved on September 16, 2015. (*Id.* at ¶ 30). According to Ms. Denunzio, the Certificate "evidenced" Prospect's "continuation of and identity with" the Hospital. (*Id.* at Section B., p. 4). Moreover, the Complaint alleges, the November 20, 2015 APA

---

[18]   The case caption is: *Roseann DeNunzio v. Ivy Holdings, Inc.; Ivy Intermediate Holdings, Inc.; Prospect Medical Holdings, Inc.; Prospect New Jersey, Inc.; Prospect EOGH, Inc.; ABC Corporations(s) 1-5; and John and/or Jane Does 1-5*, Case No. ESX-L-4013-16.

incorporated the New Jersey Department of Health's Certificate approval. (*Id.* at ¶ 32).

In Bankruptcy Court, on June 28, 2016, the debtors filed a joint plan of liquidation (Bankruptcy ECF No. 690), and accompanying disclosure statement (Bankruptcy ECF No. 691).[19] The plan includes the proposed classification and treatment of claims for all purposes, including voting, confirmation, and distribution. (Bankruptcy ECF No. 690 at 16-20). It also includes an injunction provision, exculpation provision, and release provisions, including a provision entitled "Release by Holders of Claims and Equity Interests."[20] (*Id.* at 32-36). As for the disclosure statement, it includes a $13,000,000 estimated recovery amount for general unsecured claims, and a 39.4% estimated percentage recovery. (Bankruptcy ECF No. 691 at 11). The recovery amount "excludes contingent and unliquidated litigation claims totaling approximately $9,600,000, many of which are covered by insurance." (*Id.* at n.5).

On July 13, 2016, after holding a hearing, the Bankruptcy Court filed an Order conditionally approving the disclosure statement for solicitation purposes only ("Conditional Approval Order"). (Bankruptcy ECF No. 715).

On the next day, July 14, 2016, Prime Clerk served Ms. DeNunzio and her counsel via first class mail with a copy of the Notice of (a) Conditional Approval of Disclosure Statement, (b) Combined Hearing on Final Approval of Disclosure Statement and Confirmation of the Plan, and (c) Procedures and Deadline for Voting on the Plan, among other plan-related documents (the

---

[19]    *See* 11 U.S.C. § 1121(a) (stating that in a Chapter 11 case, "[t]he debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case."); Fed. R. Bankr. P. 3016(b) (requiring that in a Chapter 11 case, "a disclosure statement under § 1125 of the Code or evidence showing compliance with § 1126(b) shall be filed with the plan or within a time fixed by the court, unless the plan is intended to provide adequate information under § 1125(f)(1).").

[20]    *See* Fed. R. Bankr. P. 3016(c) (addressing injunctions under a plan and stating "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction.").

"Plan Confirmation Hearing Notice").[21] *See* Affidavit of Service (Bankruptcy ECF No. 730, Exh. C at 63) (listing "Roseann Denunzio" and "Roseann Denunzio v. EOGH, et al.").

Eleven days later, on July 25, 2016, counsel for Prospect sent a cease-and-desist letter to Ms. Denunzio's counsel. (Bankruptcy ECF No. 836-4). Relying on New Jersey Court Rule 1:4-8, Prospect stated that the letter constituted notice and demand that Ms. Denunzio voluntarily dismiss the State Court action against Prospect with prejudice. (*Id.* at 1, 5). According to Prospect, Ms. Denunzio's claim was barred by the Bankruptcy Court's Sale Order. (*Id.* at 1). A copy of the Sale Order was attached to the letter. *See* (*id.*)

The next month, on August 23, 2016, the Bankruptcy Court conducted a hearing to consider whether the disclosure statement should be approved and whether the plan should be confirmed ("Confirmation Hearing"). (Bankruptcy ECF No. 794 at 5). Two days later, on August 25, 2016, the Court issued an Order approving the disclosure statement and confirming the joint plan of liquidation ("Confirmation Order"). (Bankruptcy ECF No. 794).

On August 29, 2016, in New Jersey State Court, Prospect moved to dismiss the State Court action on the grounds that Ms. Denunzio's claims failed as a matter of law under New Jersey Court Rule 4:6-2(e). *See* (Bankruptcy ECF Nos. 836 ¶ 21, 850-1 at 25-41).

On September 9, 2016, Prime Clerk served Ms. DeNunzio and her counsel via first class mail with a copy of the Notice of (I) Entry of Confirmation Order and (II) Effective Date ("Notice of Effective Date") (Bankruptcy ECF No. 803). *See* Affidavit of Service (Bankruptcy ECF No. 807 at 29, 79) (listing "Roseann Denunzio" and "Roseann Denunzio v. EOGH, et al.").

Later that month, on September 30, 2016, the Superior Court Presiding Judge, Dennis F. Carey, III, denied Prospect's motion to dismiss. (Bankruptcy

---

[21]   The Notice included a July 13, 2016 letter from the Official Committee of Unsecured Creditors which stated, in part, that "[t]he Plan proposes to pay holders of allowed general unsecured claims their pro rata share of available GUC Trust Funds which, as of the filing of the Plan, total approximately $4,500,000." (Banrkuptcy ECF No. 730, Exh. B at 1).

ECF No. 850-1 at 19-20). About two weeks later, on October 14, 2016, Prospect filed a second motion to dismiss, arguing lack of subject matter jurisdiction or in the alternative requesting a stay pending a ruling by the Bankruptcy Court on Prospect's action to enforce the Bankruptcy Court's Sale Order. (Bankruptcy ECF No. 836-5). Prospect asserted that it intended to file that application with the Bankruptcy Court within the next few weeks. (*Id.* at 9).

While that motion was pending before the New Jersey Superior Court, on October 26, 2016, Prospect filed a motion ("Motion to Enforce the Sale Order") in Bankruptcy Court requesting that the Court 1) enforce its Sale Order by granting injunctive relief barring Ms. Denunzio from pursuing the State Court action, and 2) direct Ms. Denunzio to dismiss her State Court action. (Bankruptcy ECF No. 836). It also requested that the Court assess attorney's fees as a sanction for Ms. Denunzio's willful violation of the Sale Order. (*Id.*)

On November 4, 2016, Judge Carey denied the second motion to dismiss, in its entirety. (Bankruptcy ECF No. 850-1 at 22-23).

On November 15, 2016, in Bankruptcy Court, Ms. Denunzio filed her opposition to Prospect's motion. (Bankruptcy ECF No. 850). She argued that Prospect's motion should be denied because her State Court action was not within the Bankruptcy Court's jurisdiction. (*Id.* at 3-5). Ms. Denunzio also maintained that Prospect's motion for sanctions should be denied, and requested leave to file a motion for the award of attorney's fees. (*Id.* at 6). On the next day, November 16, 2016, Prospect filed its reply brief. (Bankruptcy ECF No. 851).

On November 22, 2016, Bankruptcy Judge Papalia heard oral argument on Prospect's motion and issued an oral ruling granting it. (Transcript of Nov. 22, 2016 Hearing, Bankruptcy ECF No. 874). The next day, on November 23, 2016, Judge Papalia issued an Order granting Prospect's Motion to enforce the Sale Order and denying the parties' applications for sanctions ("Sale Enforcement Order," Bankruptcy ECF No. 867). He found that "[t]he claims and causes of action asserted against the Prospect Entities in the State Court Action constitute Excluded Liabilities (as defined in the Sale Order), that were

15

not assumed by the Prospect Entities under the Asset Purchase Agreement and were therefore enjoined and barred against the Prospect Entities by the Sale Order." (*Id.* at ¶ 4).

The Sale Enforcement Order also barred Ms. Denunzio from continuing to prosecute the state court NJLAD action:

> 7. DeNunzio shall cease and desist from (i) prosecuting the State Court Action and (ii) from asserting any additional claims against the Prospect Entities or any of their affiliates that relate to, arise from, or concern the subject matter of the State Court Action.

> 8. DeNunzio shall immediately dismiss the action entitled *Roseann DeNunzio vs. Ivy Holdings, Inc.; Ivy Intermediate Holdings, Inc.; Prospect Medical Holdings, Inc.; Prospect New Jersey, Inc.; Prospect EOGH, Inc.; ABC Corporation(s) 1-5; and John and/or Jane Doe(s) 1-5*, Docket No. ESX-L-4013-16 pending in the Superior Court of New Jersey, Law Division, Essex County (the "State Court Action"), without prejudice.

(*Id.* at ¶¶ 7-8).[22]

Nine days later, on December 2, 2016, pursuant to Federal Rule of Bankruptcy Procedure 9024, Ms. Denunzio filed a motion for reconsideration, requesting that Bankruptcy Judge Papalia vacate the Sale Enforcement Order and remand the State Court action to the New Jersey Superior Court pursuant to the mandatory abstention doctrine contained in 28 U.S.C. § 1334(c)(2) ("Motion for Reconsideration").  (Bankruptcy ECF No. 871). Prospect filed its opposition on December 21, 2016. (Bankruptcy ECF No. 885), and Ms. Denunzio filed her reply on January 3, 2017. (Bankruptcy ECF No. 889).

Judge Papalia held a hearing on Ms. Denunzio's reconsideration motion on February 7, 2017 and issued an oral ruling denying that motion. (*See* Transcript of Feb. 7, 2017 Hearing, Bankruptcy ECF No. 920). Two weeks later, on February 21, 2017, the Judge issued an Order denying Ms. Denunzio's

---

[22]    Judge Papalia did not issue a written opinion. His Order "incorporated the findings set forth at the hearing on the Motion on November 22, 2016." (Sale Enforcement Order ¶ 5).

motion for reconsideration "for the reasons set forth in the record" ("Reconsideration Order," Bankruptcy ECF No. 912).[23]

On March 8, 2017, Ms. Denunzio filed a Notice of Appeal to this Court. (ECF No. 1). Pursuant to Rule 8003(a)(3)(B) of the Federal Rules of Bankruptcy Procedure, she attached a copy of the Reconsideration Order. (ECF No. 1-1). Ms. Denunzio now asks this Court to reverse and vacate both the Bankruptcy Court's Sale Enforcement Order and Reconsideration Order. (Appellant Br. at 39). She also seeks to have her NJLAD case "remanded" to the New Jersey Superior Court. (*Id.*)

## II.    **Standard of Review**

This District Court has jurisdiction to hear appeals of final judgments and orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). In general, a district court reviews "'the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof.'" *In re American Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (quoting *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quotation and citation omitted)). A district court must separately analyze mixed findings of fact and conclusions of law, and appropriately apply the applicable standards—clearly erroneous or *de novo*—to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–03 (3d Cir. 1981)).

## III.   **Scope of Appeal**

Prospect contends that only the Reconsideration Order is properly on appeal.[24] Ms. Denunzio maintains that both the Sale Enforcement Order and

---

[23]    Judge Papalia did not issue a written opinion. His Order "incorporated" the findings and legal conclusions set forth at the February 7, 2017 hearing. (Reconsideration Order ¶ 1).

[24]    For clarity, I reiterate that on January 21, 2016, the Bankruptcy Court issued a Sale Order, granting Prospect's Motion and thereby authorizing the Debtors to (a) sell substantially all of their assets free and clear of liens, claims, and encumbrances, and (b) assume and assign certain executory contracts and unexpired leases. (Bankruptcy

the Reconsideration Order are on appeal. I agree with Ms. Denunzio that, despite the lack of clarity in her notice of appeal, this appeal should be construed to encompass both orders, which are intertwined.

Under Bankruptcy Rule 8003(a)(1), "[a]n appeal from a judgment, order, or decree of a bankruptcy court to a district court or BAP under 28 U.S.C. § 158(a)(1) or (a)(2) may be taken only by filing a notice of appeal with the bankruptcy clerk within the time allowed by Rule 8002." Fed. R. Bankr. P. 8003(a)(1). The Notice of Appeal must "be accompanied by the judgment, order, or decree, or the part of it, being appealed." Fed. R. Bankr. P. 8003(a)(3)(B).

Ms. Denunzio's Notice of Appeal explicitly states that the February 21, 2017 Reconsideration Order is the subject of the appeal. (ECF No. 1; Bankruptcy ECF No. 916). As required by Rule 8003(a)(3)(B), it attaches a copy of the Reconsideration Order. In her briefing to this Court, however, Ms. Denunzio seeks to reverse and vacate both the Sale Enforcement Order and the Reconsideration Order. (Appellant Br. 17-20, 33, 39).

Appellees assert that because Ms. Denunzio's Notice of Appeal attaches only the Reconsideration Order, the scope of the appeal does not include the underlying Sale Enforcement Order.[25] (Appellees Br. at 2-3) (citing *Browder v. Director of Dep't of Corrections*, 434 U.S. 257, 263 n.7 (1978) ("an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review"); *Erie v. Cty. of Crawford*, 161 F. App'x 227, 228; *Wells Fargo Bank v. Alexander* (*In re Alexander*), 05-2467 (MLC), 2006 U.S. Dist. LEXIS 16564, at *21 (D.N.J. Mar. 22, 2006)). Therefore, according to Prospect, "the sole issue on

---

ECF No. 330). On November 23, 2016, the Court issued a Sale Enforcement Order, granting Prospect's Motion to enforce the Sale Order and denying the parties' applications for sanctions. (Bankruptcy ECF No. 867). Then, on February 21, 2017, the Court issued a Reconsideration Order, denying Ms. Denunzio's Motion for Reconsideration of the Sale Enforcement Order. (Bankruptcy ECF No. 912).

[25]     Accordingly, Prospect's substantive arguments focus on the Bankruptcy Court's denial of the motion for reconsideration. (Appellees Br. at 14-22). In the alternative, however, Prospect does address the Sale Enforcement Order and contends that it was was correct. (*Id.* at 22-28).

review is whether the Bankruptcy Court abused [its] discretion" to grant reconsideration. (*Id.* at 3) (citing *Alexander*, 2006 U.S. Dist. LEXIS 16564, at *21; *Page v. Schweiker*, 786 F.2d 150, 152 (3d Cir. 1986)).

Because Federal Rule of Bankruptcy Procedure 8003(a)(3) is nearly identical to Federal Rule of Appellate Procedure 3(c)(1), I take case law interpreting the latter as a guide. *See* 10 Collier on Bankruptcy ¶ 8003.06 (16th ed.). Notices of appeal filed under Federal Rule of Appellate Procedure 3 are construed liberally. *Witasick v. Minnesota Mut. Life Ins. Co.*, 803 F.3d 184, 190 (3d Cir. 2015) (citing *Smith v. Barry*, 502 U.S. 244 (1992)).

> The purpose 'of a notice of appeal, of course, is to notify the court of appeals and the opposing party that an appeal is being taken.' Courts employ a commonsense, purposive approach to determine whether a notice of appeal complies with the rules. Thus, the Supreme Court has said that 'imperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court.'

*Gov't of Virgin Islands v. Mills*, 634 F.3d 746, 751–52 (3d Cir. 2011) (internal citations omitted).

Therefore, the Third Circuit has held that it "can exercise jurisdiction over orders not specified in the Notice of Appeal if: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010) (internal quotation marks and citation omitted).

In *Matute v. Procoast Nav. Ltd*, for example, the plaintiff filed a Notice of Appeal in which he designated the order denying a motion for reconsideration and did not designate the underlying dismissal order. 928 F.2d 627, 629 (3d Cir. 1991). The Court nevertheless considered the appeal as relating to both:

> [I]n the absence of a showing of prejudice by [defendant], it appears that [plaintiff]'s mistake in failing to state specifically that he was appealing from the underlying dismissal should be viewed as harmless error and not a jurisdictional bar to his appeal.

> Indeed, [plaintiff] did *mention* the Order of Dismissal in his notice
> of appeal; the intent to appeal from that Order, thus, can be
> inferred fairly from the notice.

*Id.* at 629-30 (emphasis in original).[26]

Applying *Matute* and construing Ms. Denunzio's Notice of Appeal liberally, I find that the three-part *Sulima* standard is satisfied. First, there is undoubtedly a connection between the Reconsideration Order and the underlying Sale Enforcement Order; Ms. Denunzio's reconsideration motion was a request that the Court reverse the Sale Enforcement Order's bar to her state NJLAD lawsuit. It is frankly difficult to consider one without considering the other. Second, because review of the Reconsideration Order is intertwined with the Sale Enforcement Order, I infer that Ms. Denunzio intended her appeal to include the underlying Sale Enforcement Order. Ms. Denunzio's other filings also indicate an intention to appeal from that Order. Third, and finally, there is no prejudice to Prospect. Ms. Denunzio's counsel inquired about appeal deadlines and gave every indication that he intended to appeal the Sale Enforcement Order (Transcript of Nov. 22, 2016 Hearing, Bankruptcy ECF No.

---

[26]     *See also Harrison v. Coker*, 587 F. App'x 736, 739 n.3 (3d Cir. 2014) (noting that the plaintiffs "listed only the court's denial of their motion for reconsideration in the notice of appeal, but they make arguments in their briefs regarding the court's dismissal and its denial of their motion for summary judgment," and finding that because the *Sulima* factors were met, the Court would exercise jurisdiction over all three orders.); *LeBoon*, 503 F.3d at 225 n.6 (citing *Matute*, 928 F.2d at 629–30) (finding that an appeal from a motion for reconsideration order rather than the underlying order on the summary judgment motions was a "technical inadequacy" that "does not in itself deprive [the Third Circuit] of jurisdiction over the appeal from the underlying order on the summary judgment motions."). *See also* 16A Wright & Miller, *Federal Practice and Procedure*, § 3949.4 (4th ed.)(footnote omitted) (recognizing that "[w]hen the notice of appeal references a later-in-time order and the appellant desires to challenge a prior order or judgment as well, there may be a better chance that the notice will be read to encompass the earlier order, at least if the referenced decision denied reconsideration of the earlier one" and "one aggrieved both by an appealable interlocutory order and by a denial of reconsideration of that order would be prudent to file notices of appeal from both, though courts have been willing to interpret a notice naming the order denying reconsideration as encompassing the initial order as well.").

874 at 61:5-:19). Prospect had a full opportunity to, and did, address the Sale Enforcement Order in its appellate brief. (*See* Appellees Br. at 22-28).

I therefore conclude that this appeal encompasses both the Bankruptcy Court's Sale Enforcement Order and its Order denying Ms. Denunzio's Motion for Reconsideration.[27] I will now address the merits of this appeal.

## IV.    Bankruptcy Court Jurisdiction

Ms. Denunzio argues that the Bankruptcy Court had no jurisdiction over the State Court action, and therefore lacked the power to order Ms. Denunzio to dismiss it without prejudice.[28] (Appellant Br. 16-30). She also argues (*id.* at 31-38) that by (in effect) entering a ruling in the State Court action, the Bankruptcy Court violated the mandatory abstention doctrine. *See* 28 U.S.C. § 1334(c)(2).[29] I consider those arguments in turn.

Ms. Denunzio's jurisdictional arguments depend on 28 U.S.C. § 1334, which vests bankruptcy jurisdiction in the district courts, and 28 U.S.C. § 157, which governs core and non-core proceedings within the bankruptcy courts. I first (**i, ii**) survey those two provisions and case law interpreting them, and

---

[27]     Nothing in this discussion implies, however, that the appeal does or could encompass the original Sale Order. Despite receiving notice, Ms. Denunzio never objected to the sale or sought appeal of the Sale Order. Rather, she allowed approval of the sale to become final. *See* 11. U.S.C. § 363(m) (explicitly requiring a stay of a sale order pending appeal and providing that a reversal or modification of an order approving a sale under section 363(b) or (c) "does not affect the validity of [the] sale ... under such authorization to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, *unless such authorization and such sale were stayed pending appeal*."); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (internal quotation marks and citation omitted) (stating that Section 363(m) "reflects the salutary policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely."); *In re Pursuit Capital Mgmt., LLC*, 874 F.3d 124, 135 (3d Cir. 2017)(quoting *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir. 1998)) (explaining that Section 363(m) moots a challenge to a sale if "'(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease.'").

[28]     This argument mainly relates to the Sale Enforcement Order. However, it was also raised and addressed in the motion for reconsideration.

[29]     This argument was raised only at the stage of the motion for reconsideration.

then **(iii)** apply them to the facts. Finally **(iv)**, I consider the applicability of *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), to the jurisdictional question.

### i.   28 U.S.C. § 1334

Section 1334 of title 28 of the United States Code "describes the jurisdictional boundaries of a district court over bankruptcy cases and proceedings but, by itself, does not vest any authority in the bankruptcy courts." *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 253 (3d Cir. 2007). Under that Section, District Courts have "original and exclusive jurisdiction of all *cases* under title 11." 28 U.S.C. § 1334(a). The District Courts also have "original but not exclusive jurisdiction of all *civil proceedings* arising under title 11, or arising in or related to *cases* under title 11." *Id.* § 1334(b). (emphasis added). The District Court "in which a case under title 11 is commenced or is pending" has exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate," and "over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327." *Id.* § 1334(e).

Notably, Section 1334 distinguishes between a "case" and a "civil proceeding." Subsection (a) applies to "cases under title 11," *id.* § 1334(a), while subsection (b) applies to "civil proceedings arising under title 11, or arising in or related to cases under title 11," *id.* § 1334(b). The Third Circuit explained the distinction in *In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2005):

> '[C]ases under Title 11,' as used in 28 U.S.C. § 1334(a), 'refers merely to the bankruptcy petition itself.' The term 'proceeding,' on the other hand, as used in 28 U.S.C. § 1334(b), refers 'to the steps within the 'case' and to any subaction within the case that may raise a disputed or litigated matter.'

391 F.3d at 226 n.38 (citations omitted).

The term "case" is an overall term for the bankruptcy matter:

> [The "case"] is the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place. The filing of a petition   for   relief,   voluntary   or   involuntary,   constitutes

> commencement of the title 11 case. From that beginning follow all of the civil proceedings, whether called administrative matters, controversies, adversary proceedings, contested matters, suits, actions or disputes, that will occur as the case under the Bankruptcy Code unfolds.

1 Collier on Bankruptcy ¶ 3.01.

"Proceeding" is an "inclusive" term for matters that occur in the course of a case. *Id.* "[A]nything that occurs within a case is a proceeding," including "contested matters, adversary proceedings, and plenary actions." *Id.* (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977)).

### ii.   28 U.S.C. § 157

Section 157(a) gives District Courts the discretionary power to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the Bankruptcy Courts. 28 U.S.C. § 157(a).[30] Pending referral from the District Court, under Section 157, "Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006), *as amended* (Mar. 17, 2006) (citing *In re Combustion Eng'g*, 391 F.3d at 225). *See* 28 U.S.C. §§ 157(b)(1), (c)(1).[31]

The first three categories are considered "core" proceedings, whereas the fourth category, "related to" proceedings, are considered "non-core" proceedings. *In re Resorts*, 372 F.3d at 162. *See also* 28 U.S.C. § 157(b)(2)

---

[30]   A referral to the Bankruptcy Court is also permitted pursuant to the Standing Order of Reference by the United States District Court for the District of New Jersey, entered on July 23, 1984 and amended on September 18, 2012. *See* Standing Order of Reference 12–1 (Sept. 18, 2012), *available at* www.njd.uscourts.gov/sites/njd/files/ StandingOrder12-1.pdf. *See also* 28 U.S.C. § 151 (referring to the bankruptcy court as a "unit" of the district court).

[31]   *See also In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004)(quoting *United States Brass Corp. v. Travelers Ins. Group, Inc.* (*In re United States Brass Corp.*), 301 F.3d 296, 303 (5th Cir. 2002)) (recognizing that "'[t]he source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157.'").

(providing a non-exhaustive list of examples of core proceedings). "A bankruptcy court may hear both core and non-core matters, *see* 28 U.S.C. §§ 157(b) and (c), and '[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction.'" *In re Allegheny Health Educ. & Research Found.*, 383 F.3d 169, 175 (3d Cir. 2004)(quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991)).

> Section 157(b)(1) addresses "core" proceedings:
>
> Bankruptcy judges may hear and determine all *cases* under title 11 and all *core proceedings* arising under title 11, or arising in a *case* under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1) (emphasis added).

> Section 157(c)(1), on other hand, addresses "non-core" proceedings:
>
> A bankruptcy judge may hear a *proceeding that is not a core proceeding but that is otherwise related to a case under title 11.* In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

*Id.* § 157(c)(1)(emphasis added).[32]

The distinction "is crucial in bankruptcy cases because it defines both the extent of the Bankruptcy Court's jurisdiction, and the standard by which the District Court reviews its factual findings." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). *See also In re Allegheny Health*, 383 F.3d at 175. As explained by the Third Circuit in *Halper*,

---

[32]    *See Matters of Roper*, 203 B.R. 326, 331 n.4 (Bankr. N.D. Ala. 1996) (noting the similar language of Sections 1334 and 157, and concluding that the definitions of "case" and "proceeding" under Section 1334 also apply to Section 157).

> [u]pon referral, '[s]ection 157 provides the bankruptcy court with two levels of judicial power, depending upon the type of proceeding before it.' First, in 'core' proceedings, the Bankruptcy Court assumes the role of a court of first instance with comprehensive power to hear, decide and enter final orders and judgments. Appellate review of the Bankruptcy Court's judgment is available initially in the District Court and then in the Court of Appeals. Second, in 'noncore' proceedings, the Bankruptcy Court's adjudicatory power is limited to hearing the dispute and submitting 'proposed findings of facts and conclusions of law to the district court.' The District Court, after considering the Bankruptcy Court's proposed findings and conducting a *de novo* review of any matter objected to therein, enters final orders and judgments in 'non-core' proceedings.

164 F.3d at 836 (internal citations and footnote omitted). *See* 28 U.S.C. §§ 157(b)(1), (c)(1). *See also In re Exide Techs.*, 544 F.3d 196, 205–06 (3d Cir. 2008).

### iii.  Application of 28 U.S.C. §§ 1334 and 157

Ms. Denunzio maintains that in issuing the Sale Enforcement Order and ordering her to dismiss her State court NJLAD action against Prospect, a non-debtor, the Bankruptcy Court erroneously exercised jurisdiction over that State court action. First, she argues that the Bankruptcy Court had no jurisdiction at all under Section 1334. (Appellant Br. at 16-17). Her NJLAD action, she says, includes "separate and distinct claims over which the Bankruptcy Court did not have jurisdiction." (*Id.* at 17). Second, she argues that even if the Bankruptcy Court had jurisdiction, it did not have the power to issue the Sale Enforcement Order in the NJLAD action, a state law personal injury tort action which was at best a "non-core" proceeding under 28 U.S.C. § 157(b)(2)(O).[33]

Ms. Denunzio's arguments are misplaced. As recognized by Bankruptcy Judge Papalia, the proceeding before the Bankruptcy Court was not the State

---

[33]     Under § 157(b)(2)(O), "core" proceedings include "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, *except personal injury tort or wrongful death claims*"). 28 U.S.C. § 157(b)(2)(O). Ms. Denunzio asserts that because a NJLAD claim is analogous to a personal injury tort, her case is therefore a "non-core" proceeding. (Appellant Br. 17).

court action itself. Rather, the proceeding before the Court was Prospect's Motion to Enforce the Sale Order. (Transcript of Nov. 22, 2016 Hearing, Bankruptcy ECF No. 874 at 45:17-:21). Accordingly, the Bankruptcy Court did not exercise jurisdiction over Ms. Denunzio's NJLAD case; it exercised jurisdiction over the Motion to Enforce the Sale Order.[34]

The Bankruptcy Court possessed jurisdiction over proceedings to enforce the Sale Order; indeed, the motion to enforce the Sale Order was a "core" proceeding. Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1).[35] In considering whether a proceeding is "core," courts must first look to Section 157(b)'s non-exhaustive list of "core proceedings" to determine if the proceeding falls within that list. *Halper*, 164 F.3d at 836. Next, courts must apply the Third Circuit's test for a "core" proceeding. *Id.* Under that test, a proceeding is considered core if "(1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id. See In re G-I Holdings, Inc.*, 278 B.R. 376, 381 (Bankr. D.N.J. 2002) (stating that "[a]ssuming *arguendo* that the instant action falls within § 157(b), it must

---

[34]    The Bankruptcy Court pointed out that it was not holding that a state law employment discrimination case is a "core" proceeding. (Transcript of Nov. 22, 2016 Hearing at 45:19-:23). Rather, "[t]his Court finds that that is not the issue before the Court and on this motion and is not the basis for this Court's jurisdiction or decision. The Court has, at best, non-core, related to jurisdiction over the claim, the state law claim, but that really is not relevant at all to the decision." (*Id.* at 45:21-:25).

[35]    As previously mentioned, whether a claim is core or non-core does not affect a bankruptcy court's jurisdiction to hear a case at all—only its authority to enter a final order. *See In re Seven Fields Dev. Corp.*, 505 F.3d at 253–54 (distinguishing between a bankruptcy court's subject matter jurisdiction and its authority to determine claims under 28 U.S.C. § 157); 28 U.S.C. § 157(c)(a) (stating that a bankruptcy court may render proposed findings of fact and conclusions on non-core proceedings). Here, the Bankruptcy Judge held a hearing on Prospect's Motion and after finding that the proceeding was "core," he issued an Order. I will therefore focus on whether the proceeding was "core," i.e. whether the Judge had the authority to hear the proceeding *and* enter the Order.

nonetheless satisfy the next step—the core test—as directed by *Halper*."). *See also In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009); *In re Exide*, 544 F.3d at 206.

I start from the premise, not really contested on this appeal, that entry of the Sale Order itself was a core proceeding within the jurisdiction of the Bankruptcy Court. Such a sale order is authorized by the Code, 11 U.S.C. § 363. Under that Section, "[t]he trustee or debtor-in-possession may sell property free and clear of an interest in the property provided that one or more of the provisions under Section 363(f) is satisfied." *In re Messina*, 687 F.3d 74, 77 n.4 (3d Cir. 2012). Such a sale order is listed as a core proceeding in 28 U.S.C. § 157(b)(2)(N). The injunctive provision and successor liability provisions within the Sale Order were likewise within the Bankruptcy court's core jurisdiction. *See In re Motors Liquidation Co.*, 428 B.R. 43, 57 (S.D.N.Y. 2010) (citing cases and stating that "courts have characterized the injunctive authority of bankruptcy courts as 'core' when the rights sought to be enforced by injunction are based on provisions of the Bankruptcy Code, such as the "free and clear" authority of section 363(f).").

As for the related Motion to Enforce the Sale Order, the Bankruptcy Judge provided numerous cogent rationales for his conclusion that it, too, was a "core proceeding" which both (1) invoked a right under title 11 and (2) by its nature could only arise in a bankruptcy case.

First, Judge Papalia found that the motion fell within the scope of the core proceedings enumerated in 28 U.S.C. §§ 157(b)(2)(A), (N), and (O). (Transcript of Nov. 22, 2016 Hearing at 33:3-:9. *See also* Transcript of Feb. 7, 2017 Hearing at 14:14-16, 23:16-20.) I agree. Section 157(b)(2)(A) identifies core proceedings as "matters concerning the administration of the estate";[36] subsection (N) as "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed

---

[36]   The bankruptcy "estate," automatically created when a bankruptcy case is filed, includes all of a debtor's legal or equitable interests in property as of the commencement of the case. 11 U.S.C. § 541.

claims against the estate"; and subsection (O) as "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." The Sale Enforcement Order concerned estate administration, related to an order approving the sale of property, and affected the liquidation of the estate.

Second, Judge Papalia applied the holding of *In re Allegheny*, 383 F.3d at 176, and by this alternative route arrived at the conclusion that "a motion to enforce an order approving a sale under 363(f) is a core proceeding." (Transcript of Nov. 22, 2016 Hearing at 44:24-45:7). In *Allegheny*, 383 F.3d at 176, the Third Circuit held "that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders."[37] *See also* (Transcript of Nov. 22, 2016 Hearing at 46:1-19); (Transcript of Feb. 7, 2017 Hearing at 14:10-:11) (stating that "[t]he Court has jurisdiction over this matter under 28 U.S.C. 1334(b) to enforce its own orders."). This motion to enforce required Judge Papalia to interpret and give effect to his prior Sale Order, and was itself a core proceeding within the meaning of *Allegheny*.

Third, Judge Papalia held in the alternative that a motion to enforce a sale order is a core proceeding, either "arising in"[38] or "arising under"[39] the

---

[37]    *See also In re Allegheny Health Educ. & Research Found.*, 265 B.R. 88, 100 (Bankr. W.D. Pa. 2001), *subsequently aff'd in part, rev'd in part*, 383 F.3d 169 (3d Cir. 2004) (holding that a request to confirm or vacate a labor arbitration award that was made within the context of an adversary proceeding brought to enforce sales orders of the Court was a "core" proceeding because it was not routine and could not "have been brought outside the confines of a bankruptcy case," and noting that "such request, because it is brought within the context of a proceeding to enforce sales orders, also likely falls within the reach of 28 U.S.C. § 157(b)(2)(N) as well, making the same a core proceeding."); *In re Marcus Hook*, 943 F.2d at 267 (explaining that an attempt to enforce a sale order is a "core" proceeding because it falls within section 157(b)(2)(N) and satisfies the Third Circuit's two-step test).

[38]    Claims that "arise in" a bankruptcy case are "claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Stoe*, 436 F.3d at 218. "Arising in" acts as the residual category of civil proceedings. 1 Collier on Bankruptcy ¶ 3.01.

bankruptcy case, and therefore gives rise to jurisdiction under 28 U.S.C. § 1334(b). (Transcript of Nov. 22, 2016 Hearing at 45:8-:12) (citing *In re Christ Hosp.*, 502 B.R. 158, 180 n.25 (Bankr. D.N.J. 2013), *aff'd*, No. CIV.A. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014); *In re FormTech Indus., LLC*, 439 B.R. 352, 357 (Bankr. D. Del. 2010)). (*See also* Transcript of Feb. 7, 2017 Hearing at 24:24-25:3).

Once again, I find the reasoning correct. Prospect moved to enforce a Sale Order issued pursuant to 11 U.S.C. § 363—Use, sale, or lease of property. Accordingly, the proceeding "arises under" Section 363 of the Bankruptcy Code. *See also* 1 Collier on Bankruptcy ¶ 3.01 (stating that sales free and clear of liens are an example of civil proceedings "arising under title 11"). In deciding that motion, Judge Papalia was not taking over a state-law tort case; he was enforcing his Sale Order, a matter of bankruptcy administration that arose in and could only occur in a bankruptcy case.

Fourth, Judge Papalia found that even absent statutory jurisdiction under 28 U.S.C. § 1334, he would have inherent or ancillary jurisdiction to enforce his own Sale Order. (Transcript of Feb. 7, 2017 Hearing at 46:20-47:6) (citing *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997)). *See also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (recognizing that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"); *In re Chateaugay Corp.*, 201 B.R. at 62 (stating that "[b]ankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334."). Within the Sale Order itself was a provision explicitly retaining jurisdiction to enforce the order. (Sale Order ¶ 56) (stating, in part, that the Bankruptcy Court "shall retain exclusive jurisdiction to, among other things, interpret,

---

[39]   "Whether a proceeding is a 'core' proceeding that 'arises under' title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive right invoked." *Stoe*, 436 F.3d at 217 (citing *Halper*, 164 F.3d at 836, 836–37 n.7).

implement, and enforce the terms and provisions of this Order and the Agreement"). Such enforcement was within the court's inherent authority.

I agree with the Bankruptcy Judge's reasoning in support of entry of the Sale Enforcement Order. Judge Papalia reiterated his jurisdiction-related findings at the hearing on Ms. Denunzio's Motion for Reconsideration, and properly denied that motion based on that reasoning. (Transcript of Feb. 7, 2017 Hearing at 23:16-24:14). For the above-mentioned reasons, the Bankruptcy Judge properly determined both originally and on reconsideration that he had jurisdiction to grant Prospect's Motion to Enforce the Sale Order and to enforce it by enjoining pursuit of the state court NJLAD action. I agree, and affirm.

### iv. *Celotex* and bankruptcy court injunctions

In a related point, Ms. Denunzio argues that the Bankruptcy Judge erred in finding that the United States Supreme Court's decision in *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), authorized the entry of an injunction under 11 U.S.C. § 105(a).[40] Unlike this case, she says, *Celotex* "involved a federal tort action and issues of how the claimants' execution on a supersedeas appeal bond 'related to' the debtor corporation's bankruptcy." (Appellant Br. 20). I agree that *Celotex* is distinguishable. Notwithstanding that distinction, however, I find that the Bankruptcy Judge correctly held that Ms. Denunzio was required to comply with the Sale Order and that pursuant to that Order, she was properly barred from pursuing her NJLAD case. In short, *Celotex* is a non-issue.

---

[40]     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

In *Celotex*, a money judgment against Celotex was stayed pending appeal, and the stay was secured by a supersedeas bond. *Id.* The Court of Appeals affirmed, and on the same day, Celotex filed a voluntary chapter 11 petition in bankruptcy. The Bankruptcy Court issued an injunction under 11 U.S.C. § 105(a) which "stayed all proceedings involving Celotex 'regardless of … whether the matter is on appeal and a supersedeas bond has been posted by [Celotex].'" *Id.* at 303. The judgment creditors then went to federal court in another district, and that district court granted them leave to execute against the surety on the supersedeas bond, despite the bankruptcy court's injunction. *Id.* at 305.

The United States Supreme Court held that the bankruptcy court had possessed jurisdiction to enjoin proceedings to execute on the bond, because those proceedings were "at least 'related to'" Celotex's bankruptcy within the meaning of Sections 1334(b) and 157(a). *Id.* at 307, 309-10. It also held that the judgment creditor could not collaterally attack the Bankruptcy Court's injunction in another district court:

> We have made clear that '[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.' If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal 'to the district court for the judicial district in which the bankruptcy judge is serving,' . . . and then to the Court of Appeals for the Eleventh Circuit . . . Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law.

*Id.* (internal citations omitted).

The extent to which *Celotex* bore on Judge Papalia's analysis is frankly unclear. In its Motion to Enforce the Sale Order, Prospect cited *Celotex* and characterized Ms. Denunzio's NJLAD action as "an impermissible collateral

attack" on the Sale Order. (Bankruptcy ECF No. 836 at 13). During oral argument, the Bankruptcy Judge summarized *Celotex* and later explained that he brought up *Celotex* because under that case, Ms. Denunzio was required to raise her pre-closing claims and any issues regarding her "ability to pursue them before the Court that issued the injunction." (Transcript of Nov. 22, 2016 Hearing, Bankruptcy ECF No. 874 at 29:15-:18). In the course of ruling, the Bankruptcy Judge stated that he relied on *Celotex* "for the reasons previously stated." (*Id.* at 56:14-:16). He particularly pointed out that the judgment creditor in *Celotex*, instead of participating in the bankruptcy case, had filed a collateral motion in federal district court. (*Id.* at 57:2-:5).

Here we do not have the *Celotex* situation. Ms. Denunzio appeared in the bankruptcy case, opposed Prospect's motion, and attempted to persuade the Bankruptcy Judge to limit the scope of his order. Thus the vice of a collateral attack did not manifest itself here. In *In re Kaiser Aluminum Corp.*, the Third Circuit distinguished *Celotex* on similar grounds:

> *Celotex* involved a true collateral attack: the attack on the injunction proceeded through the federal courts in a different district and circuit (the Northern District of Texas and the Fifth Circuit) from the issuing court (the Bankruptcy Court for the Middle District of Florida). Here, while the [lawsuit filed in the United States District Court for the Northern District of California] is separate from the injunction's issuing court, we are reviewing a motion for enforcement of the injunction filed in its issuing court. Accordingly, it is not a collateral attack because the issuing court, not the collateral court, was asked to determine the scope of the injunction.
>
> Had the California District Court attempted to determine the scope of the injunction, it would have been improper under *Celotex*. The proper course of action for the California District Court would be to stay the matter pending a ruling by the Bankruptcy Court issuing the injunction. *See, e.g., Aqualine Assocs. L.P. v. Genesis Health Ventures, Inc.*, 96 Fed. Appx. 132 (4th Cir. 2004) (unpublished).

386 F. App'x at 204 n.2.

In short, Prospect asked the Bankruptcy Court to enforce its Sale Order, and Ms. Denunzio opposed that motion before the Bankruptcy Court. The

result was the Sale Enforcement Order and Reconsideration Order now under review. Accordingly, I do not find that *Celotex* affects the issues here.[41]

### V. Section 363(f) Sale and Successor Liability Under the Code

Section 363(f) of the Bankruptcy Code permits a sale of property "free and clear" of an "interest in such property." 11 U.S.C. § 363(f). In particular, it imposes five conditions, at least one of which must be satisfied for a sale free and clear of interest to occur:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

---

[41]   Ms. Denunzio also points to the Third Circuit's discussion of *Celotex* in *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009). It is not relevant to this situation. There, the debtor filed a motion to expand a Section 105 preliminary injunction to include new claims against a new party in Montana state courts. 591 F.3d at 168. The Third Circuit agreed that "related to" subject matter jurisdiction was wholly lacking:

> If it were the case that a bankruptcy court's jurisdiction over an adversary proceeding was sufficient in and of itself to give it jurisdiction to enjoin third parties . . . the Supreme Court's entire analysis of related-to jurisdiction in *Celotex* would have been superfluous. Clearly it was not. The Supreme Court undertook the analysis it did because a bankruptcy court may not enjoin proceedings between third parties unless those proceedings arise in or under or are related to the underlying bankruptcy.

*Id.* at 175 (footnote omitted). Here, for the reasons stated above, the enforcement of the Sale Order did arise in and under the bankruptcy case. "Related to" jurisdiction over strangers to the bankruptcy case was not at issue.

*Id.* Here, the Sale Order provides, in part, that "[t]he conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Purchased Assets free and clear of any interest in such property[.]" (Sale Order ¶ 15). It also permanently enjoins all "litigation claimants, employees and former employees" who were "holding Claims and Interests against the Debtors of the Purchased Assets arising under or out of, in connection with, or in any way relating to, the Assets or the transfer of the Assets to Buyer"

> from asserting any Claims and Interests relating to the Assets or the transfer of the Assets against Buyer and its Affiliates, successors, designees, assigns, or property or the Assets including, without limitation taking any of the following actions with respect to or based on any Interest or Claim relating to the Assets or the transfer of the Assets (other than Assumed Liabilities): (a) commencing or continuing in any manner any action or other proceeding against Buyer, its Affiliates, successors or assigns, assets or properties . . .

(*Id.* at ¶ 38).

In addressing the merits of Prospect's Motion to Enforce the Sale Order and ultimately granting it, the Bankruptcy Judge ruled as follows: The court, he said, "has jurisdiction, had jurisdiction to enter the injunction, the sale order with the injunction and now has jurisdiction to enforce it and the enforcement extends to the claims made by the plaintiff in this case based on activity that was undisputably prepetition and pre-closing." (Transcript of Nov. 22, 2016 Hearing at 54:3-:8). In so ruling, the Bankruptcy Judge relied in part on the Third Circuit's "analogous and controlling" decision in *In re Trans World Airlines, Inc. ("TWA")*, 322 F.3d 283 (3d Cir. 2003). (*Id.* at 47:13-:15).

On appeal, Ms. Denunzio asserts that the Judge erred in relying on *In re TWA* because that case 1) did not involve the NJLAD and 2) "arose from [that plaintiff's] federal employment discrimination claims against bankruptcy debtor TWA." Ms. DeNunzio, by contrast, "asserted no claims against the bankruptcy debtor." (Appellant Br. at 18-19). These distinctions, I find, do not make a difference.

34

In *TWA*, the Third Circuit considered whether a sale under 11 U.S.C. § 363(f) precluded the purchaser's liability for discrimination claims stemming from the debtors' conduct before the sale. In that case, the Bankruptcy Court had entered an Order approving the sale of Trans World Airlines ("TWA") to American Airlines ("American"). 322 F.3d at 286. That sale order extinguished the liability of American, as successor to TWA, for 1) employment discrimination claims against TWA, and 2) a Travel Voucher Program, both of which existed prior to TWA's filing in Chapter 11[42] and the sale to American. *Id.* at 285-86. In particular, pursuant to a class action settlement with female flight attendants who had alleged sex discrimination in violation of Title VII of the Civil Rights Act of 1964, TWA had issued travel vouchers to eligible class members. *Id.* at 285. Additionally, as of March 2, 2001, twenty-nine charges of discrimination had been filed against TWA with the Equal Employment Opportunity Commission (EEOC) and state or local agencies, alleging violations of numerous federal employment discrimination statutes. *Id.* at 285–86.

The EEOC and the flight attendant/voucher holders objected to the sale, but the court approved the Sale Order. *Id.* It "determined that there was no basis for successor liability on the part of American and that the flight attendants' claims could be treated as unsecured claims." *Id.* Accordingly, the Sale Order "extinguished successor liability on the part of American," and "enjoined all persons from seeking to enforce successor liability claims against American." *Id.* at 287.

---

[42] TWA and American had pre-petition dealings regarding the potential acquisition. "Throughout 2000, TWA held intermittent discussions with American concerning the possibility of a strategic partnership. On January 3, 2001, American contacted TWA with a proposal to purchase substantially all of TWA's assets. On January 9, 2001, American agreed to a purchase plan subject to an auction and Bankruptcy Court approval." *In re TWA*, 322 F.3d at 286.

Here, the Bankruptcy Court emphasized that in *TWA*, similar to the case at hand, there were "pre-petition dealings between TWA and American Airlines" as to "the potential acquisition," and those dealings "resulted in an asset sale that was consummated through the bankruptcy court." (Transcript of Nov. 22, 2016 Hearing at 47:24-48:4. *See also* Transcript of Feb. 7, 2017 Hearing at 32:10-:21.)

35

Affirming, the Third Circuit held that "[b]ecause section 363(f) of the Bankruptcy Code permits a sale of property 'free and clear' of an 'interest in such property' and because the claims against TWA here were connected to or arise from the assets sold, we affirm the Bankruptcy Court's order approving the sale 'free and clear' of successor liability." *Id.* at 285.

The first component of the *TWA* decision was the conclusion that the claims in that case constituted an "interest in . . . property" within the meaning of Section 363(f):

> Here the Airlines correctly assert that the Travel Voucher and EEOC claims at issue had the same relationship to TWA's assets in the § 363(f) sale, as the employee benefits did to the debtors' assets in [*In re Leckie Smokeless Coal Co.*, 99 F.3d 573 (4th Cir.1996)]. In each case it was the assets of the debtor which gave rise to the claims. Had TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability claims would not have arisen. Furthermore, TWA's investment in commercial aviation is inextricably linked to its employment of the Knox-Schillinger claimants as flight attendants, and its ability to distribute travel vouchers as part of the settlement agreement. While the interests of the EEOC and the Knox-Schillinger class in the assets of TWA's bankruptcy estate are not interests in property in the sense that they are not *in rem* interests, the reasoning of *Leckie* and [*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252 (3d Cir. 2000)] suggests that they are interests in property within the meaning of section 363(f) in the sense that they arise from the property being sold.
>
> Indeed, to equate interests in property with only *in rem* interests such as liens would be inconsistent with section 363(f)(3), which contemplates that a lien is but one type of interest.

*Id.* at 289–90.

The second component of the *TWA* decision was the conclusion that the voucher and EEOC claims were within the scope of the fifth requirement of Section 363(f)—*i.e.*, that the airline "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). The Court agreed with the Bankruptcy Court's finding that both the

EEOC claims and the travel voucher program were subject to monetary valuation. 322 F.3d at 291.

Third, the Third Circuit evaluated "other considerations." *Id.* at 291-93. It stated that "[e]ven were we to conclude that the claims at issue are not interests in property, the priority scheme of the Bankruptcy Code supports the transfer of TWA's assets free and clear of the claims":

> We recognize that the claims of the EEOC and the Knox-Schillinger class of plaintiffs are based on congressional enactments addressing employment discrimination and are, therefore, not to be extinguished absent a compelling justification. At the same time, in the context of a bankruptcy, these claims are, by their general nature, general unsecured claims and, as such, are accorded low priority. To allow the claimants to assert successor liability claims against American while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme.
>
> Moreover, the sale of TWA's assets to American at a time when TWA was in financial distress was likely facilitated by American obtaining title to the assets free and clear of these civil rights claims.

*Id.* at 292-93. The Third Circuit affirmed the Bankruptcy Court's authorization of the sale of TWA's assets to American free and clear of the voucher and EEOC claims. *Id.* at 293.

Ms. Denunzio points out that in *TWA*, the discrimination claims were originally filed against the bankruptcy debtor, whereas her NJLAD claims were filed against the purchaser, Prospect. To the extent our case is distinguishable, it is *a fortiori*. The whole point of *TWA* is that such later assertions of purchaser/successor liability may be barred by a sale order.[43]

---

[43]   Ms. Denunzio also cites footnote 4 of *In re TWA*, in which, she says, the Third Circuit explained that "successor liability might have attached to American through the application of employment discrimination laws." (Appellant Br. 19). Ms. Denunzio's characterization of the footnote is not accurate. The Court declined to address whether there was a basis for successor liability under nonbankruptcy law, but assumed *arguendo* that it existed. *In re TWA*, 322 F.3d at 288 n.4.

Fourth, and finally, the Bankruptcy Court adopted the *TWA* Court's policy-related rationale that where the court has worked out a comprehensive plan and sale for the benefit of creditors, individual unsecured creditors cannot be permitted to sit out the process and then seek 100 cents on the dollar from the asset purchaser:

> [N]ot only was that highest and best offer made, there was competitive bidding. . . which resulted in 4.5 million being separately set aside for unsecured creditors and as noted in the disclosure statement will result in a substantial dividend to unsecured creditors in this case.

(Transcript of Nov. 22, 2016 Hearing at 50:15-:21). Noting that Ms. Denunzio had opted to forgo recovery from the estate, the Court appropriately held her to that choice:

> Having made those choices, plaintiff is not now allowed to upset the fully noticed, the amply noticed and carefully structured sale process after the fact, as that would allow her, and allowing her to do so would have the direct result that the *TWA* Court was concerned about and addressed in its decision and as noted above, in chilling the sale process limiting or eliminating recoveries to creditors and eliminating jobs.

(*Id.* at 53:20-54:2) (emphasis added). Successor liability under these circumstances, then, would not merely be unauthorized; it would be inequitable and contrary to the purposes of the bankruptcy laws.

## VI.    Successor Liability under New Jersey law

Ms. Denunzio contends that the Bankruptcy Judge failed to consider New Jersey case law governing her NJLAD claims against the non-debtor Prospect. (Appellant Br. 20-22). She maintains that New Jersey's successor liability doctrine authorizes tort damages against purchaser/successors like Prospect. (*Id.* at 21) (citing *Lefever v. K.P. Hovnanian Enterprises, Inc.*, 160 N.J. 307 (1999)). The Judge, says Ms. Denunzio, "erroneously marginalized and failed to address *Lefever* by citing to only its dissent." (*Id.* at 22, 27). Ms. Denunzio's reliance on the New Jersey Supreme Court's 4-3 decision in *Lefever* is misguided; the Bankruptcy Judge correctly ruled that *Lefever* presented a

different issue, and that, in any event, its holding does not survive the later-decided *TWA* case.

In *Lefever*, the Court considered the product-line exception to the general rule of corporate-successor liability. Under New Jersey law, an acquiring company is generally not liable for the liabilities of the seller, with certain exceptions.[44] One such exception is the so-called "product-line exception." Under that exception, "by purchasing a substantial part of the manufacturer's assets and continuing to market goods in the same product line, a corporation may be exposed to strict liability in tort for defects in the predecessor's products." *Id.* at 310.

The majority in *Lefever* held that the product-line exception could apply to impose strict product liability for injuries cause by a defective forklift, even where the successor had purchased the predecessor's assets at a bankruptcy sale. For purposes of a Section 363(f) sale, the majority concluded, the tort claim would be a mere right to payment, not an "interest in property." *See* 11 U.S.C. § 363(f)(1).[45] For purposes of a Chapter 11 reorganization, the majority held, the claim would be barred only as to property that was "dealt with" by the plan. *Id.* at 317-18 (citing 11 U.S.C. § 1141(c)). This was not such a claim, the court held, because, *inter alia,* the plaintiff was not a creditor of the bankrupt, and he filed no claim. *Id.* at 320–21. Adding to its analysis the consideration of

---

[44]    Traditionally, there have been only four exceptions:

(1) the successor expressly or impliedly assumes the predecessor's liabilities; (2) there is an actual or *de facto* consolidation or merger of the seller and the purchaser; (3) the purchasing company is a mere continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability.

160 N.J. at 310 (citing 15 William & Fletcher, *Cyclopedia of the Law of Corporations* § 7122, nn. 9–15 (1990)). In her state-court NJLAD action, Ms. Denunzio sought to establish Prospect's liability based on a "mere continuation" theory. Neither that nor any other successor liability theory will apply, however, if the bar of the Sale Order is effective.

[45]    Appellee Prospect correctly notes that the *Lefever* Court's 1999 interpretation of Section 363(f) is inconsistent with more recent federal case law. (Appellees Br. 27). *See TWA*, 322 F.3d at 290. *See* Section V., *supra,* discussing *TWA*.

the policies underlying the product-line exception, the four-member majority held that successor liability would apply.

Justice Stewart Pollock, joined by two others, dissented. True, he wrote, the plan had not "dealt with" the plaintiff's tort claim, but that was only because the duly-notified plaintiff "decided not to file a claim." *Id.* at 328, 330. The Court, he wrote, could not validly weigh the policies underlying state law without also considering the policies of the bankruptcy laws and the powers of the bankruptcy court:

> To impose successor liability would frustrate 'the orderly scheme of the bankruptcy law by allowing some unsecured creditors to recover without regard to the priority order of the bankruptcy proceedings.' A bankruptcy court's authority to sell assets free and clear of existing tort claims is 'implicit in the court's general equitable powers and its duty to distribute debtor's assets.' The effect of subjecting the successor to the risk of liability is to diminish the value of the assets to the extent of the cost of that risk. That diminution in value will redound to the detriment of all other creditors who seek to participate in the distribution of the bankruptcy estate. Permitting a tort claimant to pursue a successor after a bankruptcy sale would grant that claimant a priority over other claimants who were paid in accordance with the Bankruptcy Code and would produce a negative impact on the trustee's ability to sell assets of the estate at a fair price. Those considerations should tip the scale back toward the general rule of not imposing liability on a successor when a claimant has been injured before the bankruptcy proceedings and provided with notice and the opportunity to participate in the proceedings.

*Id.* at 330–31 (Pollock, J., dissenting) (internal citations omitted).

Justice Pollock's view, as it turned out, prevailed when it came time for the Third Circuit to consider the issue. As recognized by the Judge Papalia, the Third Circuit's binding decision in *TWA* expressly rejected the legal premise of the *Lefever* majority's analysis of section 363(f): that the term "interest" did not encompass a mere right to payment. Rather, Justice Pollock's dissent "effectively anticipated the Third Circuit's ruling in *TWA*" that it did. (Transcript of Feb. 7, 2017 Hearing at 33:18–:19). Ms. Denunzio's claim, which arose pre-petition, was indeed an "interest" in property within the meaning of Section

40

363(f). In addition, the Bankruptcy Court did indeed "deal with" Ms. Denunzio's claim in Justice Pollock's sense that it would have done so but for her decision not to pursue it. Ms. Denunzio was a contingent creditor of the Hospital. Both she and her counsel received numerous notices, including notice of the deadline for filing a proof of claim, but no proof of claim was ever filed. She asserts that her claim is against non-debtor Prospect, rather than debtor East Orange Hospital, but that formulation simply begs the antecedent question of whether the Sale order could legitimately cut off Prospect's successor liability.

At oral argument for Prospect's motion to enforce the Sale Order, the Bankruptcy Judge succinctly rejected that argument:

> [A]lthough the assertion is that the purchaser Prospect . . . was essentially in control of the debtor's assets and decisions at the time of the firing, and the plaintiff did not name the debtor in the law suit, there is no question that the sale had not yet closed. The asset, purchase agreement had not been, and not yet closed and the bankruptcy petition had not yet been filed at the time that plaintiff was terminated on August 19th, 2015. So there was, at the very least, there was debtor involvement in that event and certainly in the normal instance, that debtor would have at least been named as a party in these types of claims.

(Transcript of Nov. 22, 2016 Hearing at 49:25-50:10). *See also* (*id.* at 40:8–:11) (stating that "certainly whether she filed a proof of claim or not, Ms. DeNunzio is the holder or was the holder of a claim against the debtors as she was terminated while the debtors were her employer and prior to the time of the closing of the sale."). On reconsideration, the Judge was even more to-the-point: to the argument that Denunzio had no claim against EOGH, he replied, "She does have a claim. She just didn't assert it." (Transcript of Feb. 7, 2017 Hearing at 6:6 to :7).[46]

---

[46]     In a related argument, Ms. Denunzio asserts that the Bankruptcy Judge "misapplied the irrelevant notice issue" of *In re Christ Hosp.*, 502 B.R. 158, 170 (Bankr. D.N.J. 2013), *aff'd*, No. CIV.A. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014). I am not persuaded. The Bankruptcy Court appropriately observed that "given adequate notice[,] failure to object to a 363 sale has been found to constitute consent per 362, 363(f)(2) to a free and clear sale of the nonobjector's interest in property being sold." (Transcript of Nov. 22, 2016 Hearing at 49:14-:18) (quoting *In re Christ Hosp.*,

In sum, Ms. Denunzio mistakenly claims that the "product line" question in *Lefever* controls the issues in this case, and also fails to grapple with the Third Circuit's contrary interpretation of section 363(f) in *TWA*. (Transcript of Nov. 22, 2016 Hearing, Bankruptcy ECF No. 874 at 14:9-:10). Even if successor liability would theoretically have attached as a matter of state law, we never got to that issue. Under *TWA*, "the claims are barred or enjoined pursuant to the sale order." (*Id.* at 27:16-:17). It is of course true, as Denunzio says, that on the motion for reconsideration the Judge placed emphasis on the dissent, not the holding, of *Lefever*. (Transcript of Feb. 7, 2017 Hearing, Bankruptcy ECF No. 920 at 32:3-36:10). That was proper because, as it turned out, *TWA* adopted the view of the law stated in Justice Pollock's dissent, and rejected the majority's view. The Third Circuit's later interpretation of federal bankruptcy law in *TWA* of course binds this Court, just as it bound the Bankruptcy Court, which therefore did not err in its rejection of *Lefever*.[47] Successor liability under the substantive law of New Jersey, to the extent it could apply, does not apply because it was validly cut off by the Sale Order.

**VII.          Mandatory Abstention**

Ms. Denunzio asserts that the Bankruptcy Court erred in rejecting her argument that the mandatory abstention doctrine barred the Bankruptcy Court from enjoining the state action. (Appellant Br. 31). I disagree.

---

502 B.R. at 174). Ms. Denunzio's inaction was an appropriate factor to consider, notwithstanding the superficial difference that she bypassed the process for asserting a claim in bankruptcy, waited for the sale to go through, and filed her claim against the successor.

[47]      Ms. Denunzio's brief places the cart before the horse, analyzing the merits of successor liability as if the Sale Order did not exist. (Appellant Br. at 28-31). Like the Bankruptcy Court, I consider the issue to be "not the underlying merits of the state action, but whether the state court action can proceed at all in light of the sale order and whether the enforcement and interpretation of the sale order is a core proceeding over which this court has plenary jurisdiction." (Transcript of Feb. 7, 2017 Hearing at 22:22-23:2).

Mandatory abstention[48] is governed by Title 28, United States Code, Section 1334(c)(2):

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). The Third Circuit in *Stoe* broke down the requirements of mandatory abstention as follows:

> [U]pon a timely motion under § 1334(c)(2), a district court *must* abstain if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

436 F.3d at 213 (emphasis in original). Notably, given that mandatory abstention applies only to civil proceedings that are "related to a case under title 11," i.e., non-core proceedings, "[m]andatory abstention does not apply where the proceeding is 'core.'" *In re Midstate Mortg. Inv'rs, Inc.*, 105 F. App'x 420, 422 (3d Cir. 2004) (citing *In re Donington*, 194 B.R. 750, 757 (D.N.J. 1996)).[49] Because, as I held in Section IV.iii, *supra*, the Sale Order enforcement

---

[48]    Permissive abstention, which is not at issue in this case, is governed by Section 1334(c)(1) of Title 28. *See* 28 U.S.C. § 1334(c)(1).

[49]    *See Stoe*, 436 F.3d at 217 (stating that "[t]he question presented here is whether [Plaintiff's] claim 'arises under' title 11, 'arises in' a bankruptcy case, or is merely 'related to' a bankruptcy case. This is equivalent to the question whether [Plaintiff's] claim is a 'core' proceeding or a 'non-core' proceeding within the meaning of 28 U.S.C. § 157."); *In re Exide*, 544 F.3d at 206 ("Whether claims are considered core or non-core proceedings dictates not only the bankruptcy court's role and powers but also the availability of mandatory abstention ..."). *See also* 1 Collier on Bankruptcy ¶ 3.05

proceeding was a "core" proceeding, mandatory abstention is inapplicable. Nevertheless, for the sake of completeness, I will briefly address Ms. Denunzio's abstention arguments.

On her motion for reconsideration, Ms. Denunzio argued that the Bankruptcy Court's decision granting Prospect's Motion to Enforce the Sale Order was erroneous because, *inter alia*, her NJLAD claims were subject to mandatory abstention. (Transcript of Feb. 7, 2017 Hearing at 19:18-:23). *See* (Bankruptcy ECF No. 871-1). The Bankruptcy Judge concluded that Ms. Denunzio did not satisfy her initial burden for reconsideration under Federal Rule of Bankruptcy Procedure 9024 or Federal Rule of Civil Procedure 60(b).[50] (Transcript of Feb. 7, 2017 Hearing at 21:1-22:9). He nevertheless addressed the merits of the motion. (*Id.* at 22:9-23:2).

---

(recognizing that "Section 1334(c)(2) applies only to civil proceedings that are "related to a case under title 11," not those that arise under title 11 or arise in a case under title 11.").

[50]     Federal Rule of Bankruptcy Procedure 9024 incorporates, with certain exceptions, Rule 60 of the Federal Rules of Civil Procedure. *See* 10 Collier on Bankruptcy ¶ 9024.01 (16th ed.). Ms. Denunzio sought relief under Federal Rule of Civil Procedure 60(b)(1), or in the alternative, 60(b)(6). (Bankruptcy ECF No. 871-1 at 3). *See* Fed. R. Civ. P. 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect"); *id.* 60(b)(6) ("any other reason that justifies relief").

Ms. Denunzio did not originally invoke abstention, but raised it for the first time in her Motion for Reconsideration. *See* (Bankruptcy ECF No. 871-1 at 4). She explained that mandatory abstention was not raised before because "there was no jurisdiction that was asserted by any federal court over Ms. DeNunzio's case until November 23rd," when the Bankruptcy Court held a hearing and issued an Order on Prospect's Motion to Enforce the Sale Order. (Transcript of Feb. 7, 2017 Hearing at 11:12-:14). The Bankruptcy Judge stated that although he "disagree[d] with that argument," he would nevertheless address the merits of the mandatory abstention argument. (*Id.* at 25:21-23).

Recognizing the barriers to reconsideration, I nevertheless give plenary review to the Bankruptcy Court's interpretation the law. "The decision to deny a Motion for Reconsideration is within the discretion of the District Court, but 'if the court's denial was based upon the interpretation and application of a legal precept, review is plenary.'" *Le v. Univ. of Pa.*, 321 F.3d 403, 405–06 (3d Cir. 2003)(quoting *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir. 1985)).

In addressing mandatory abstention and Ms. Denunzio's reliance on *Stoe*, Judge Paplia made the general observation that Denunzio's argument was based on her continuing misapprehension of the issue before the court:

> That issue is not the adjudication of the state law claims, but the enforcement of the January 21st, 2016 sale order over which this court has core jurisdiction. It is not based on the adjudication or any finding as to the state law claims.

(*Id.* at 26:22-27:4). Judge Papalia then considered the five requirements of mandatory abstention and found that the first three were not satisfied. (*Id.* at 27:12-28:10). As to the first requirement, the Judge found that the proceeding was not "based on a state law claim or cause of action." (*Id.* at 27:15-:16). Rather, the proceeding was one to enforce a § 363 Sale Order, which is a "core" bankruptcy proceeding. (*Id.* at 27:16-:18). As to the second requirement, he pointed out that mandatory abstention applies only to "related to" cases. (*Id.* at 27:19-:21). This Sale order enforcement proceeding, however, is not merely "related to" the bankruptcy case; "it is a matter that arises under and arises in a case under Title 11." (*Id.* at 27:21-:24). Finally, as to the third requirement, he noted that the § 363 sale motion was one that could only be brought in bankruptcy court. (*Id.* at 28:1-:3). Because all five requirements must be met, the Bankruptcy Judge concluded that mandatory abstention did not apply. (*Id.* at 36:11-:13).

On appeal, Ms. Denunzio primarily relies on *Stoe*, 436 F.3d at 209, but the case is distinguishable. There, the Third Circuit addressed mandatory abstention in the context of an action for unpaid wages under Pennsylvania law. 436 F.3d at 209. The *Stoe* plaintiff brought suit in state court against former and current officers of his previous employer, but did not sue the employer itself, which was shielded by its bankruptcy filing under Chapter 11. The defendants removed the case to federal district court pursuant to 28 U.S.C. § 1452(a). The district court held, *inter alia*, that mandatory abstention did not apply.

On appeal, the United States Court of Appeals for the Third Circuit considered the mandatory abstention question.[51] It applied the five mandatory abstention requirements, finding that plaintiff had satisfied the first four but remanding for consideration of the fifth. *Id.* at 213-20.

Ms. Denunzio argues that her case, like the one in *Stoe,* meets the first requirement of being "based on a state law claim or cause of action." *Stoe,* 436 F.3d at 213. But Judge Papalia was not, as in *Stoe,* considering a state law case removed from state court. Rather, he was enforcing a sale order entered in the bankruptcy case. (Conversely, *Stoe* was not considering the effect of a free-and-clear sale order.)

As to the second requirement, Ms. Denunzio maintains that her state-law NJLAD case, like the action for back wages in *Stoe,* was "related to" the bankruptcy case.[52] (*Id.* at 33, 36-39). Once again, the argument is beside the point. The proceeding before the Bankruptcy Court was not the state-court NJLAD action. It was Prospect's motion to enforce the § 363(f) Sale Order, a core proceeding not just related to, but actually arising in, the bankruptcy case.[53]

---

[51]    The Third Circuit also considered the preliminary issue of whether mandatory abstention could apply to a removed case, disagreeing with the district court and concluding that it could. *Id.* at 216. Section 1452(a) of title 28 permits the removal of claims and causes of action pending in state or another federal court to the district court. 28 U.S.C. § 1452(a). This removal provision applies to "related to" cases, "arising in" cases, and "arising under" cases. The mandatory abstention provision of § 1334(c)(2) only applies to "related to" cases. *See Stoe,* 436 F.3d at 215. *Compare* 28 U.S.C. § 1452 (governing removal and remand for all claims for which there is jurisdiction under § 1334) *with* 28 U.S.C. § 1334(c)(2) (stating explicitly that mandatory abstention only applies in "related to" cases). Still, as to "related to" cases, the two overlap; thus it cannot be said that no removed case is subject to mandatory abstention.

[52]    This actually represents a concession *arguendo*: "For purposes of this issue only, and pursuant to 28 U.S.C. § 1334(c)(2), we utilize the Bankruptcy Court's November 22, 2016 'related to' conclusion to demonstrate why mandatory abstention applies. We do not otherwise concede that 'related to' jurisdiction exists." (Appellant Br. 33 n.3).

[53]    *See* Transcript of Feb. 7, 2017 Hearing at 7:14-:15 (stating that the proceeding was "based on the sale order, a bankruptcy order that was entered.").

Assuming the mandatory abstention doctrine applied at all to this core proceeding, at least two of its critical requirements were not met. I affirm the Bankruptcy Court and find that the mandatory abstention provision was inapplicable.[54]

## VIII.  Conclusion

For the reasons stated above, the Bankruptcy Court's Sale Enforcement Order and Reconsideration Order are affirmed. An appropriate order follows.

Dated: June 27, 2018

Kevin McNulty
**United States District Judge**

---

[54]     One issue, not raised by the parties, remains. The Bankruptcy Court's reasoning, which I have upheld, deals with successor liability—*i.e.*, any liability that the purchaser, Prospect, might have taken on by virtue of the purchase. As stated above, it was entirely proper for the Bankruptcy Court to enjoin Denunzio from pursuing her NJLAD claim against Prospect *qua* purchaser/successor.

The state court complaint, however, asserts a second theory of liability. Prospect, it says, exercised *de facto* authority at East Orange General Hospital even before the sale took place, and in that role was somehow directly responsible for Denunzio's dismissal. (*See* p. 12, *supra.*) Such a claim—based strictly on Prospect's own actions, as opposed to its liability as successor-by-purchase to East Orange General Hospital—might conceivably be pursued without impinging on the legitimate scope of the Sale Order and Sale Enforcement Order. That issue was not presented to the Bankruptcy Judge, however, and is not pressed on this appeal. At most, Denunzio referred in passing to the relevant allegation in her state-court complaint.

I express no view, of course, on the merits. At the time of the dismissal, East Orange General Hospital was Denunzio's employer, and it had not yet been sold to Prospect (although an abortive, first asset purchase agreement was pending, *see* pp. 2–3, *supra*). Thus to demonstrate that Prospect was directly responsible for Denunzio's allegedly discriminatory dismissal might not be possible. The narrow issue to which I refer here, however, is whether such a claim, whatever its plausibility, might legitimately be excepted from the scope of the litigation bar in the Sale Enforcement Order. Any suggested clarification or modification of the injunction against litigation should be presented to the Bankruptcy Judge in the first instance.